[Civil No. 552.]

JAMES T. SIMMS, Appellant, v. HANNAH T. SIMMS, Appellee.

APPEAL from the District Court of the Third Judicial District in and for the County of Maricopa.   John J. Hawkins, Judge.

Modified and affirmed.   175 U. S. 162, 44 L. Ed. 115, 20 Sup. Ct. 58.

Pierce Evans, C. F. Ainsworth, and Fitch & Campbell, for Appellant.

Millay & Bennett, Joseph H. Kibbey, and W. H. Barnes, for Appellee.

February 23, 1897.   Affirmed.

ROUSE, J., dissenting.—I am not able to agree with the majority of the court in the judgment announced, affirming the judgment of the district court.

The appellant, James T. Simms, as plaintiff in the district court, commenced an action for a divorce against his wife, Hannah T. Simms, on the ground of abandonment.   In her answer, after the general denial, she set up a cross-bill praying for a divorce from plaintiff on the ground of cruelty.

Subsequently she dismissed her cross-bill and the trial was had on the complaint and the general denial thereto. The record shows that plaintiff and defendant had been married for several years; that when they were married plaintiff was a widower, and had several sons by a former marriage; that plaintiff and defendant for several years resided on a farm near Phœnix, on which there was a comfortable residence, in which they had resided for some time; that a few years before the suit for divorce was commenced plaintiff and defendant had left their said home and had gone to an eastern state to reside, the said farm being leased or rented to plaintiff's sons, who were then men of full age, and that they occupied the dwelling referred to and cultivated the farm connected therewith; that subsquently plaintiff and defendant returned to the territory and again took up their residence in said dwelling. There is evidence in the record to show that defendant and plaintiff's sons did not get along amiably. The complaint was filed October 9, 1894, and the answer thereto was filed on October 18, 1894.

Some time in October, 1893, the record discloses the fact that defendant and one of plaintiff's sons, who also resided in the same dwelling, not being able to get along, plaintiff made something of a proposal to defendant, that plaintiff and defendant would leave the farm and go to the Lemon Hotel, in Phœnix, to live, to which defendant in part consented; that thereafter plaintiff, on the fourteenth day of December, 1893, secured rooms at said hotel, and notified defendant of that fact, and requested her to go there with him and live. This she declined to do, and though often requested by said plaintiff to go to said hotel and live, she refused, and as a result this suit of divorce was commenced on the ground of abandonment. The court refused to grant plaintiff a divorce. We are not inclined to differ with the court in its judgment affirming that decision, notwithstanding our belief that plaintiff was sincere in establishing a home at the Lemon Hotel, where he and defendant could reside in peace, while the sons could reside where they were residing. We believe the plaintiff's purpose was to promote the happiness of the wife and also the happiness of the sons. We are further inclined to believe from the record that defendant believed plaintiff's location at the said hotel was sincere and

in good faith, but for purposes not now necessary to express she declined to go there to live with plaintiff.

The statute of this territory provides that a divorce may be granted to a husband "when his wife shall voluntarily have left his bed and board for the space of six months with the intention of abandonment." Rev. Stats. 1887, par. 2111, subd. 2. This action at bar was for a divorce on the ground set forth in this statute. Hence, while the husband had the right to fix the domicile, and his domicile is the wife's domicile, and she must reside there with him, yet as by the terms of the said statute the abandonment of the wife is established by certain acts on her part, the acts of the husband in choosing a domicile and the action of the wife in refusing to live with him are facts necessary to be considered by the trial courts, and if that court, by the exercise of a sound discretion, should find that the acts of the husband in the selection of a home were not exercised in good faith for the best interests of himself and family, the court should refuse to grant him a divorce. If, upon the other hand, the court should believe the home was thus chosen, and the wife should decline to go there to reside with him without a proper reason, the divorce should be granted. On June 6, 1896, the court gave judgment dismissing plaintiff's bill for divorce and entered a judgment for the defendant that she have judgment for seven hundred and fifty dollars for counsel fees, and one hundred and fifty dollars per month for her maintenance since the fourteenth day of December, 1893.

To the judgment of this court affirming the said judgment of the district court, allowing said sum for counsel fees and the allowance to defendant of one hundred and fifty dollars per month from December 14, 1893, as alimony, I dissent. It appears from the record that the defendant has no children or any one dependent upon her for support; that long before there was any move on the part of plaintiff toward an effort to secure a divorce a division of plaintiff's property was made with defendant, so that, by good and sufficient instruments, what was considered by both parties to be one half of all the possessions was transferred to her. By said transaction defendant received real estate from plaintiff proven in this trial to be worth at the date of the trial something over forty thousand dollars. That said property was her separate prop-

erty, and under her control from the date when so conveyed to her and from that time to the date of the trial. Said division of the property was made with the express purpose of disposing of the community property, and to make full preparations for the preservation of the wife's rights. The statute of this territory provides: "If the wife, whether complainant or defendant, has not a sufficient income for her maintenance during the pending of a suit for a divorce, the judge may, either in the term time or in vacation, after due notice, allow her a sum for her support in proportion to the means of the husband, until a final decree shall be made in the case." Rev. Stats. 1887, par. 2120.

That statute gives the judge or court pending the action certain power. This power of the judge or court depends, first, upon the fact that the wife has not a sufficient maintenance; second, after due notice has been given; third, the allowance must be in proportion to the husband's means; fourth, the allowance can only be until the suit is terminated. The complaint in the case at bar was filed October 9th, and the answer thereto October 18, 1894. No motion for alimony was made by defendant until April 2, 1896, nearly eighteen months after issue was joined. On that date her motion was made, and notice served on plaintiff, and counter-affidavits were filed, but no order was made with reference thereto, and nothing done thereon, until the date of the final judgment, June 6, 1896, and then only in the final judgment. The power to grant alimony is pending the action for divorce, not at the time when divorce is refused and case is dismissed. It is an allowance for the wife's support and to provide her with the means to prosecute the action or make her defense. Rev. Stats. 1887, par. 2120. She had maintained herself, and had been represented by a number of distinguished attorneys from the beginning. The suit was at an end when the judgment for an allowance was made. Again, the record shows that the defendant owned property in her own right acquired from plaintiff of equal value to that which he owned,—of the value of over forty thousand dollars,—which was productive. Before alimony can be allowed, it must be shown that the wife has not sufficient income for her maintenance pending the action. Par. 2120, *supra;* Bishop on Marriage and Divorce, sec. 394; *Collins* v. *Collins,* 80 N. Y. 12.

The judgment in this case for alimony was at the time the divorce was refused; it was not pending the action.

The judgment was a money judgment in favor of the wife, to be enforced against her husband by an execution, notwithstanding the fact that she was possessed of large means and was robed during the pendency of the suit with the marital right to draw on her husband's credit for support, and notwithstanding the fact that she may have needed a maintenance in that way during that time. The allowance was one hundred and fifty dollars per month for a period from December, 1893, up to the date of the judgment, covering a period of nearly a year before the suit was filed, covering a period when only the threatenings of a domestic storm were approaching, but when no storm was actually raging. The judgment for alimony was for a sum over five thousand dollars, of which said seven hundred and fifty dollars was for counsel fees. The statute only authorizes the court to make an allowance to the wife for her maintenance during the pendency of the suit; the allowance cannot be made after the suit is terminated.

The allowance can only be on motion made after notice, not before, and certain conditions must be known to exist. before the order can be made. In this case the motion was made and notice given, but no order was made. The action is for a divorce, and not an action for the division of the property between plaintiff and defendant, or for a personal judgment between them; the divorce being refused, the parties remained husband and wife, with all the rights of such, and governed by all the laws pertaining to the marital relation. The only judgment there could be pronounced in this case, on the refusal of the divorce, was a judgment for costs. If the court had prior to that time made an order allowing the wife support, etc., and said order had not been complied with, it would have had power to enforce said order; but it had no power to enter the judgment for allowance which was entered. That judgment, as has been stated, reaches back to a time when there were no domestic troubles, and in effect regulates the domestic affairs of the parties at a time when they were not before the court. By statute it is provided: "The court pronouncing a decree of divorce from the bonds of matrimony shall also decree and order a division of the estate of the

parties in such a way as to the court shall seem just and right, having due regard to the rights of each party and their children, if any; provided, however, that nothing herein contained shall be construed to compel either party to divest him or herself of the title to separate property." Rev. Stats. 1887, par. 2114. If a divorce had been granted in the case at bar, the court could have divided the community property between the parties as would have been just and right, but could not have interfered with their separate property. It is further provided: "The court may award costs to party in whose behalf the sentence or decree shall pass, or that each party shall pay his or her own costs as to the court shall appear reasonable." Rev. Stats. 1887, par. 2122. There are no other provisions of the statutes applicable to the case at bar, and hence we hold that the only judgment that the court could render was judgment for the costs of the suit. The judgment was entered in this case, on the thirteenth day of June, 1896, for the sum of five thousand two hundred and fifty dollars, exclusive of costs, and the motion for a new trial and to set aside such judgment was overruled and denied on June 29, 1896. Thereafter, on June 30, 1896, plaintiff filed an appeal-bond in the sum of eleven thousand dollars, which was duly approved and appeal granted. Thereafter, on the fifteenth day of July, 1896, defendant gave notice to plaintiff that on July 27, 1897, she would apply for an order for alimony pending the appeal of said case, and on said date last mentioned the judge made a decree ordering and adjudging that plaintiff pay defendant within ten days two hundred and fifty dollars for her support, as alimony at the rate of one hundred and fifty dollars per month from the date of said former decree,—viz., June 13, 1896,—and the further sum thereafter of one hundred and fifty dollars per month in advance from the first day of August, 1896, during the pendency of the action, and the further sum of five hundred dollars as counsel fees. Thereafter, in the supreme court, the appellee, defendant below, on the twenty-seventh day of January, 1897, filed in the supreme court her motion for an order dismissing said appeal for the reason that appellant had not complied with the decree and order last above referred to, and on the same date—viz., January 27, 1897—her attorneys, Messrs. Kibbey, Barnes, Millay, and Bennett, filed a motion to remit

all the judgment of the district court for alimony and attorneys' fees in excess of five thousand dollars,—to wit, the sum of two hundred and fifty dollars. It will be observed that at the date of judgment the amount decreed in favor of defendant was two thousand five hundred and fifty dollars; that plaintiff perfected his appeal on June 30, 1897, and that thereafter the court decreed that plaintiff should pay defendant one hundred and fifty dollars per month; that two hundred and fifty dollars was due to August 1, 1896; that in addition thereto he was to pay her five hundred dollars for counsel fees. Due at the date of said motion,—viz., January 27, 1897: Original judgment, $5,250; alimony to August 1, 1896, $250; alimony per month thereafter, to February 1, 1897, $900; counsel fees, $500;—making in all, $6,900. The bond on appeal was both an appeal and a stay bond. After it was executed, approved, and filed, the appeal was complete, and the district court no longer had jurisdiction over the case. Rev. Stats. 1887, par. 865. The case then was under the jurisdiction of the supreme court on appeal, and said court had jurisdiction of the case, as it was on the final date when judgment was entered by the district court.

"Any party in whose favor a verdict or judgment has been rendered may in open court remit any part of said verdict or judgment, and such remitter shall be noted in the docket and entered in the minutes, and an execution shall thereafter issue for the balance only of such judgment after deducting the amount remitted." Rev. Stats. 1887, par. 817.

It is evident from said paragraph and the remaining paragraphs of the chapter of the statutes to which it belongs that the remitter can only be entered in the district court, and only in that court before an appeal has been perfected, excepting as is provided by the following: "If in any judgment rendered in the district court there shall be an excess of damages rendered, and before the plaintiff has entered a release of the same in such court in the manner provided by law, such judgment shall be removed to the supreme court; it shall be lawful for the party in whose favor such excess of damages has been rendered to make such release in the supreme court, in the same manner as such release is required to be made in the district court."

The course to be pursued in entering a remitter not in

term is pointed out and directed by paragraph 818 of the Revised Statutes of 1887. That course was not pursued in this case; and even if the case at bar was such as that in which a remitter could be entered, the appellee failed to pursue the course prescribed by law, and the judgment has to remain where it was—entered in the district court. It will be observed, however, that the right to remit is given only to a plaintiff. It is evident that the right is given to the one who has instituted a suit to recover a money judgment or a property of a certain value, that he may make a verdict or judgment which is in excess of the amount claimed a valid verdict or judgment, by having them correspond with the allegations of the complaint, or to correspond to the evidence in the trial. In the case at bar the judgment was for five thousand two hundred and fifty dollars. To secure an appeal and stay of judgment, plaintiff was required by law to execute a bond for at least double the sum. A bond in a smaller sum would not have stayed the execution. The right of appeal from the district to the supreme court is fixed on the value of the matter in controversy, at two hundred dollars. Suppose the judgment of the district court exceeds that sum, and an appeal is taken: can it be successfully maintained that after the appeal has been perfected the appellee can destroy the jurisdiction of the supreme court by entering a remitter so as to bring the amount just under two hundred dollars? Again, suppose a suit should be instituted in a court for a sum in excess of jurisdiction of said court: could jurisdiction be retained by the plaintiff, after judgment, remitting all in of excess of jurisdictional sum? We contend that a remitter can only be made to correct an error in the verdict or judgment by reason of the fact that the verdict or judgment is in excess of the amount claimed, or that the evidence does not support the verdict or judgment. It is apparent that in the effort to remit the insignificant sum of two hundred and fifty dollars that it was the purpose of appellee to prevent the case from going to another tribunal for review, leaving the judgment reduced to just five thousand dollars. As stated before, this is not an action for a money judgment. The money part of the judgment is a mere incident. It was rendered, in our judgment, without any legal authority. Hence we think the judgment should be reversed and the case dismissed.